**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GK PARANDHAMAIA,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. 1:25-cv-2349-JMC |
| **SUBCOM, LLC,** | * | |
| *Defendant*. | * | |
| | * | |

* * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff GK Parandhamaia ("Plaintiff") filed the instant action on July 18, 2025, which alleges breach of contract and violations of the Maryland Wage Hour Law (the "MWHL") and Maryland Wage, Payment, and Collection Law (the "MWPCL") against SubCom, LLC ("Defendant"). (ECF No. 1). Presently pending before the Court is Defendant's Motion for Leave to File a Counterclaim. (ECF No. 37).[1] The Motion is fully briefed (ECF Nos. 37, 41, 45) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth immediately below, the Motion (ECF No. 37) is GRANTED.

## 1. BACKGROUND

Plaintiff is a former employee of Defendant and worked as an Electronics Supervisor from January 2016 to February 2025. Plaintiff filed their Complaint on July 18, 2025. (ECF No. 1). The

[1] Local Rule 105.1 requires a memorandum to be filed with every motion. As pointed out by Plaintiff, Defendant failed to file a supporting memorandum. However, Fed. R. Civ. P. 1 directs the Court to construe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Per the "long tradition of crediting substance over form," the Court will not bar Defendant's Motion because of a Local Rule 105.1 violation. *FutureCare Irvington, LLC v. OneBeacon Am. Ins. Co.*, No. GLR-18-189, 2018 WL 9946031, at *3 (D. Md. Sept. 25, 2018); *see Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 801 (D. Md. 2010).

Complaint alleges breach of contract and violations of the Maryland Wage Hour Law (the "MWHL") and Maryland Wage, Payment, and Collection Law (the "MWPCL"), and seeks an award of compensatory, liquidated, and treble damages, in addition to attorney's fees, costs, and expenses. *Id*.

On September 11, 2025, Defendant filed its Answer to the Complaint. (ECF No. 9). The Court subsequently issued a proposed Scheduling Order on October 28, 2025, setting an initial discovery deadline of March 9, 2026. (ECF No. 12). The Court also issued an Informal Discovery Memorandum detailing how the parties are to seek judicial intervention in the event of a discovery dispute. (ECF No. 13).

The parties participated in a virtual settlement conference with Judge Aslan on January 1, 2026, which was unsuccessful. *See* (ECF No. 23). After the settlement conference, the parties filed a second Joint Status Report which requested the Court to extend the discovery deadline to May 29, 2026, and asked for a second settlement conference to be conducted after discovery closes. (ECF No. 23). The same day, the Court approved the second Joint Status Report. (ECF No. 24). A second settlement conference was then scheduled for June 17, 2026. (ECF No. 25).

On April 28, 2026, the parties filed a Joint Motion for Extension of Time to Complete Discovery, requesting that the May 29, 2026 discovery deadline be moved to July 24, 2026, and that the second settlement conference be rescheduled. (ECF No. 28). The Court granted the parties' request on April 30, 2026 (ECF No. 29) and the second settlement conference was rescheduled for July 28, 2026. (ECF No. 30).

On July 23, 2026, Counsel for Plaintiff filed a Motion to Withdraw and a Motion for a 30-Day Stay. (ECF Nos. 31, 32). The Motion for a 30-Day Stay explained that the parties are

"attempting to resolve a significant dispute concerning the production of electronically stored information, which has had a substantial impact on the course of discovery in this matter." (ECF No. 31 at 2). The Motion for a 30-Day Stay also stated that Defendant had recently communicated that the dispute would serve as a basis for a Counterclaim if it was not resolved. *Id.* The Court issued an Order the following day granting the Motion to Withdraw but denied the Motion to Stay and directed the parties to "confer and propose a joint scheduling order that contemplated the time necessary to work through the current discovery dispute and other anticipated filings including the time for Plaintiff to obtain new counsel." (ECF No. 34).

On August 12, 2026, after no response from either party to the prior Order, the Court issued another Order directing the parties to "confer and propose a scheduling order or otherwise indicate their positions on the scheduling order if they cannot agree within fourteen days . . . ." (ECF No. 36). That same day, Defendant filed the Motion for Leave to File a Counterclaim at issue against Plaintiff for breach of contract (of both Plaintiff's employment agreement and the Company's confidentiality agreement), and misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., and Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Comm. Law § 11-1201 et seq. (the "Motion") (ECF No. 37). Defendant asserts that Plaintiff improperly retained a back-up copy of his entire email inbox and/or his pst. from SubCom systems, which totals 126 GB of data. *Id*. at 2.

On August 25, 2026, new Counsel for Plaintiff entered his appearance (ECF No. 38) and on August 26, 2026, the parties filed a Joint Status Report which included a partially agreed to Proposed Scheduling Order. (ECF No. 40). On September 8, 2026, the Court issued a Scheduling Order with a fact discovery deadline of December 4, 2026. (ECF No. 43).

## II. STANDARD OF REVIEW

Motions to amend pleadings and for leave to file counterclaims are governed by the same standard. *DNCSI Sols., LLC v. Landmore Inc*., No. TTC-19-70, 2020 WL 6830074, at *2 (W.D. Va. Nov. 20, 2020); *see Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439-40 (4th Cir. 2011). The Supreme Court has recognized that, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962).

Nonetheless, when the moving party files a counterclaim "after the deadline established in the scheduling order for doing so, Rule 16(b)(4) becomes the starting point in the Court's analysis." *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 106-07 (D. Md. 2013). Thus, "once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a).'" *CBX Techs., Inc. v. GCC Techs., LLC,* No. JKB-10-2112, 2012 WL 3038639, at *3 (D. Md. July 24, 2012) (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.,* 262 F. Supp. 2d 618, 631 (D. Md. 2003)); *see Nourison Rug Corp. v. Parvizian,* 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").

Per the "good cause" standard under Rule 16(b)(4), the Court "focuses on the timeliness of the amendment," specifically "the diligence of the moving party." *Montgomery v. Anne Ardunel*

*Cnty*., Md., 182 F. App'x 156, 162 (4th Cir. 2006); *see also CBX Techs., Inc.,* 2012 WL 3038639, at *4 (quoting *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.,* 190 F.R.D. 372, 375 (D. Md. 1999) (citation omitted)) (""[G]ood cause" means that scheduling deadlines cannot be met despite a party's diligent efforts ... Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."); *see also Rassoull v. Maximus, Inc.,* 209 F.R.D. 372, 373-74 (D. Md. 2002) (The Court "is less concerned with the substance of the proposed amendment . . . [and] focuses on the timeliness of the amendment and the reasons for its tardy submission"). The Court considers whether the moving party "acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014).

For example, the moving party has "good cause" to amend, when "at least some of the evidence needed ... to prove his or her claim did not come to light until after the amendment deadline." *Tawwaab v. Va. Linen Serv*., 729 F. Supp. 2d 757, 768 (D. Md. 2010); *see Brightview Group, LP v. Glynn*, No. SAG-21-3027, 2022 WL 743937, at *11 (D. Md. Mar. 11, 2022) (explaining that courts in this circuit routinely conclude that new information uncovered during the course of discovery constitutes good cause); *see e.g., DNCSI Sols.,* WL 6830074, at *2 (the movant satisfied the good cause standard due to newly discovered information provided in discovery).

Next, if the Court determines that the moving party has good cause, then, pursuant to Rule 15(a)(2), courts "'freely give leave' to parties to amend pleadings 'when justice so requires.'" *Sohrabi v. Mirghahari,* No. GJH-20-2001, 2023 WL 1416020, at *2 (D. Md. Jan. 31, 2023) (citing Fed. R. Civ. P. 15(a)(2)). The Court should only deny such a request if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or ... amount to

futility," *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.,* No. RDB–12–2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). Thus, delay alone is "an insufficient reason to deny the plaintiff's motion to amend." *Id.*; *see also Davis v. Piper Aircraft Corp*., 615 F.2d 606 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial.").

When determining futility, the Court does not evaluate "the underlying merits of the case.'" *MTB Servs.,* 2013 WL 1819944, at *3 (quoting *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.,* No. CCB–11–0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)). Rather, "the merits of the litigation" are only relevant to the Court's ruling if a "proposed amendment may clearly be seen as futile." *Davis,* 615 F.2d at 613. Leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co*., 785 F.2d 503, 510 (4th Cir. 1986) (citing *Davis*, 615 F.2d at 613); *see e.g., TFFI Corp. v. Williams*, No. DKC-13-1809, 2015 WL 5008708, at *2 (D. Md. Aug. 20, 2015) ("Although the viability of Plaintiff's claims will be tested by the anticipated dispositive motions, Plaintiff's motion for leave to amend alleges enough plausible facts against the remaining defendants to not be futile."); *see also Davis*, 615 F.2d at 613 ("Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, *see e.g., DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968), conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.").

## III. ANALYSIS

The Scheduling Order in this case set an original deadline of December 11, 2025 for moving for joinder of additional parties and amendment of pleadings. (ECF No. 12). A subsequent modification of the Scheduling Order extended the deadline for amending the pleadings to January 30, 2026. (ECF No. 19). Defendant filed the instant Motion on August 12, 2026. (ECF No. 37). Therefore, this Court's analysis begins with whether Defendant has good cause for moving to file its Counterclaim after the deadline set by the Scheduling Order. *See CBX Techs., Inc*., 2012 WL 3038639, at *3; Fed. R. Civ. P. 16(b)(4).

Defendant moves to amend based on information allegedly obtained during the course of discovery. (ECF No. 37 at 3). Defendant contends that Plaintiff disclosed in June 2026 that they improperly retained a back-up copy of their "entire SubCom email inbox and/or pst. from SubCom systems, which totals 126 GB of data." *Id*. Plaintiff argues that Defendant knew of this information as early as March 2026, at the time of Plaintiff's production, but still waited five months to file this Motion. (ECF No. 41 at 3). In defense of its tardy submission, Defendant insists that they "promptly and diligently raised this issue to Plaintiff's attention and notified him on more than one occasion of its intent to proceed with a counterclaim should the dispute not be resolved." (ECF No. 37 at 6). For Defendant sent two comprehensive letters, on June 23, 2026 and August 5, 2026, with a formal notice to Plaintiff with a demand for an accounting of all documents and information. *Id*. at 2-3; *see also* (ECF No. 45 at 6).

The Court finds that Defendant has good cause for filing the Motion after the January 30, 2026 deadline to amend pleadings. The late filing is not an act of carelessness but a result of new information of Plaintiff's email and data retention coming to light after the Court's imposed deadline. *CBX Techs., Inc.,* 2012 WL 3038639, at *4. Defendant filed this Motion only two months after putting the Court on notice of a dispute that may warrant a counterclaim as they waited for

Plaintiff to respond to its formal notices. Therefore, Defendant exercised the requisite diligence to satisfy Rule 16(b)(4).

Turning to Rule 15(a)(2), Plaintiff does not argue that Defendant acted in bad faith. However, Plaintiff insists that Defendant's delay in filing is "non-excusable" and they will be prejudiced if the Motion is granted. (ECF No. 41-1 at 5). They assert that the Motion is a distraction and the adjudication of the Counterclaim will ensue the need for an "entirely new set of paper discovery" and create "all too predictable discovery disputes…." *Id*. at 10. The Court finds that Plaintiff will not be prejudiced by the filing of the Motion. While the case did progress to the end of discovery, the Court has recently extended the fact witness discovery deadline to December 4, 2026, which allows ample time for additional discovery. (ECF No. 43). Nonetheless, Plaintiff insists that the additional ninety days is not enough time. (ECF No. 41 at 4). However, the Court is not satisfied with that argument. Not only did Plaintiff receive two formal requests for an account of the retained emails and documents but received ample notice of Defendant's intention of filing a counterclaim should the dispute not be resolved. Furthermore, this request does not come "shortly before or during trial" as the parties have until December 2026 to complete the necessary discovery and can request an extension of the deadline. *Johnson,* 785 F.2d at 509 (citing *Foman,* 371 U.S. at 182). As the Court has held, "leave to amend a pleading" should "be freely given" and delay is not enough to warrant a deviation from this well-established rule. *Id*. Should the parties nonetheless need an additional reasonable extension of the discovery deadline, they may make that request.

Lastly, with respect to futility, "[t]here is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion." *Morgan v. Coppin State Univ.*, No. SAG-20-0427, 2020 WL 6485083, at *2 (D. Md. Nov. 4, 2020) (quoting

*Aura Lights US Inc. v. LTD Int'l LLC*, Nos. GLR-15-3198 & GLR-15-3200, 2017 WL 2506127, at *5 (D. Md. June 8, 2017)) (internal citation omitted). But in making the futility assessment, the Court applies not the demanding standard of a Rule 12(b)(6) motion assessing the sufficiency of the pleadings, but the less demanding standard of whether the claims are clearly insufficient or frivolous on their face. *Morgan, supra* at *2. The Court finds neither is present, for the reasons set forth at length in Defendant's Reply. (ECF No. 45 at 7-11).

Defendant alleges that Plaintiff breached the Employment Agreement and Confidentiality Agreement by storing and using SubCom's confidential and propriety information on external and/or unauthorized systems and failing to return SubCom's information post-termination. (ECF No. 37-2 at 8).

Under Maryland Law, "[t]o prevail on a claim for breach of contract, the plaintiff must show at a minimum that (1) the defendant owed a contractual obligation to the plaintiff, and (2) the defendant breached that obligation." *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 432 (D. Md. 2024) (citing *RRC N.E. LLC v. BAA Md., Inc*., 413 Md. 638, 658 (2010)). If the contract constitutes a restrictive covenant, such as a confidentiality agreement, "Maryland law imposes additional requirements.... To enforce a restrictive covenant, the employer must show—in addition to the two breach of contract elements above—that (1) the employer has a legally protected interest, (2) the covenant is no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant does not impose undue hardship on the employee, and (4) the covenant does not violate public policy." *Id.* (citing *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004)). Defendant has produced a copy of the Employee Confidentiality and Invention Assignment Agreement. (ECF No. 42-1). Defendant also has a good faith basis to allege that the contract was breached by Plaintiff's retention of

company information in the form of his company email inbox based on what it learned in discovery.

As to Count II and III, according to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), the term trade secret "means all forms of and types of financial, business, scientific, technical, economic, or engineering information ... if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" "The MUTSA has a functionally identical definition of the term." *ClearOne*, 710 F. Supp. at 435 (citing Md. Code Ann., Com. Law § 11-1201(e)); *see also Philips N. Am. LLC v. Hayes*, Civ. No. ELH-20-1409, 2020 WL 5407796, at *8 (D. Md. Sept. 9, 2020) (noting that "the DTSA and MUTSA define a trade secret in substantially the same manner") (quotation omitted).

The Court finds that Defendant's allegations are not plainly futile so as to bar the amendment. First, Plaintiff's reliance upon the immunity provision of § 1833(b) is misplaced. Plaintiff is correct that he cannot be held liable for the disclosure of a trade secret that is made "in confidence … to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint …." 18 U.S.C. § 1833(b)(1)(A)(i)-(ii). However, the immunity provision does not "authorize, or limit liability for, an act that is otherwise prohibited by law." 18 U.S.C. § 1833(5); *see Peraton Inc. v. Hussain*, No. CV-25-2164, 2026 WL 11011964, at *26 (D. Md. Apr. 23, 2026) ("A person can misappropriate a trade secret through acquisition, use, or disclosure of the trade secret.") (citing 18 U.S.C. § 1839(5)). Therefore, the immunity provision does not render the Counterclaim futile on its face because Defendant has sufficiently

alleged that it seeks to hold Plaintiff liable for unauthorized acquisition, not disclosure. *See* (ECF No. 45 at 8).

Second, Defendant alleges with sufficient specificity that Plaintiff's acquisition of 126 GB of company data included "proprietary calibration and operational procedures, detailed test data and results, drawings, system configuration data, proprietary cable diagrams and/or other technical drawings, shipboard master password lists, vendor and customer information, and shipboard email (.pst) files." (ECF No. 45 at 10). Plaintiff's assertion that the above-mentioned 'terms' are mere "catchall phrases" "misses the mark." *Id*. The Counterclaim identifies the content of the retained 126 GB of company data, where the information was maintained, the measures SubCom took to ensure its protection, and the company policies that Plaintiff was subject to that "expressly prohibit the unauthorized transfer, external storage, removal, retention, and/or reuse of the information." *Id*.; *see* (ECF No. 37-2 at 8-12). Defendant's allegations touch the core elements of the DTSA and MUTSA allowing this Court to reasonably "infer that the information therein [126 GB of SubCom's data] includes trade secrets with independent economic value." *Peraton*, 2026 WL 11011964, at *23.

To be very clear, by finding that the amendment is not futile the Court is not necessarily finding that the Counterclaim would survive a dispositive motion if Plaintiff concludes there is a good faith basis to file one.

## IV. CONCLUSION

For the foregoing reasons, Defendant's requested relief (ECF No. 37) is GRANTED.

Date: September 28, 2026

/s/
J. Mark Coulson
United States Magistrate Judge