**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GK PARANDHAMAIA,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. 1:25-cv-2349-JMC |
| **SUBCOM, LLC,** | * | |
| *Defendant*. | * | |
| | * | |

* * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff GK Parandhamaia ("Plaintiff") filed the instant action on July 18, 2025, which alleges breach of contract and violations of the Maryland Wage Hour Law (the "MWHL") and Maryland Wage, Payment, and Collection Law (the "MWPCL") against SubCom, LLC ("Defendant"). (ECF No. 1). Presently pending before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaim. (ECF No. 49). The Motion is fully briefed (ECF Nos. 49, 50, 51) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth immediately below, the Motion (ECF No. 49) is DENIED.

## 1. BACKGROUND

Plaintiff is a former employee of Defendant and worked as an Electronics Supervisor from January 2016 to February 2025. Plaintiff filed their Complaint on July 18, 2025. (ECF No. 1).[1] The Complaint alleges breach of contract and violations of the MWHL and MWPCL, and seeks an award of compensatory, liquidated, and treble damages, in addition to attorney's fees, costs, and expenses. *Id*.

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document does not have an electronic filing stamp, the Court is referring to the page numbers at the bottom of the document.

On September 11, 2025, Defendant filed its Answer to the Complaint. (ECF No. 9). The Court subsequently issued a proposed Scheduling Order on October 28, 2025, setting an initial discovery deadline of March 9, 2026. (ECF No. 12). The Court also issued an Informal Discovery Memorandum detailing how the parties are to seek judicial intervention in the event of a discovery dispute. (ECF No. 13).

The parties participated in a virtual settlement conference with Judge Aslan on January 1, 2026, which was unsuccessful. *See* (ECF No. 23). After the settlement conference, the parties filed a second Joint Status Report which requested the Court to extend the discovery deadline to May 29, 2026, and asked for a second settlement conference to be conducted after discovery closes. (ECF No. 23). The same day, the Court approved the second Joint Status Report. (ECF No. 24). A second settlement conference was then scheduled for June 17, 2026. (ECF No. 25).

On April 28, 2026, the parties filed a Joint Motion for Extension of Time to Complete Discovery, requesting that the May 29, 2026 discovery deadline be moved to July 24, 2026, and that the second settlement conference be rescheduled. (ECF No. 28). The Court granted the parties' request on April 30, 2026 (ECF No. 29) and the second settlement conference was rescheduled for July 28, 2026. (ECF No. 30).

On July 23, 2026, Counsel for Plaintiff filed a Motion to Withdraw and a Motion for a 30-Day Stay. (ECF Nos. 31, 32). The Motion for a 30-Day Stay explained that the parties are "attempting to resolve a significant dispute concerning the production of electronically stored information, which has had a substantial impact on the course of discovery in this matter." (ECF No. 31 at 2). The Motion for a 30-Day Stay also stated that Defendant had recently communicated that the dispute would serve as a basis for a counterclaim if it was not resolved. *Id.* The Court issued an Order the following day granting the Motion to Withdraw but denied the Motion to Stay

and directed the parties to "confer and propose a joint scheduling order that contemplated the time necessary to work through the current discovery dispute and other anticipated filings including the time for Plaintiff to obtain new counsel." (ECF No. 34).

On August 12, 2026, after no response from either party to the prior Order, the Court issued another Order directing the parties to "confer and propose a scheduling order or otherwise indicate their positions on the scheduling order if they cannot agree within fourteen days . . . ." (ECF No. 36). That same day, Defendant filed a Motion for Leave to File a Counterclaim against Plaintiff for breach of contract (of both Plaintiff's employment agreement and the Company's confidentiality agreement), and misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., and Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Comm. Law § 11-1201 et seq. (ECF No. 37). Defendant asserted that Plaintiff improperly retained a back-up copy of his entire email inbox and/or his pst. from SubCom systems, which totals 126 GB of data. *Id*. at 2.

On August 25, 2026, new Counsel for Plaintiff entered his appearance (ECF No. 38) and on August 26, 2026, the parties filed a Joint Status Report which included a partially agreed to Proposed Scheduling Order. (ECF No. 40). On September 8, 2026, the Court issued a Scheduling Order with a fact discovery deadline of December 4, 2026. (ECF No. 43).

On September 28, 2026, the Court granted Defendant's Motion for Leave to File a Counterclaim. (ECF No. 47). That same day, Defendant filed their Counterclaim. (ECF No. 48). On October 20, 2026, Plaintiff filed the Motion to Dismiss the Counterclaim at issue. (ECF No. 49).

## II. STANDARD OF REVIEW

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

## III. ANALYSIS

Plaintiff moves to dismiss the Counterclaim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) based on the argument that (1) Defendant does not identify any alleged trade secrets and/or confidential information with any specificity, and (2) Defendant has failed to plead "the hornbook elements required by injunctive relief." (ECF No. 49-1 at 2).[2] Defendant

[2] Both the DTSA and MUTSA authorize injunctive relief to enjoin the "actual or threatened" misappropriation of trade secrets. *See* 18 U.S.C. § 1836(b)(3)(A)(i); Md. Code Ann., Com. Law § 11-1202(a). Since injunctive relief is a remedy, not a separate cause of action, this opinion will not address Plaintiff's argument at this time. *See Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001).

opposes the motion and argues that they adequately pled their breach of contract and DTSA and MUTSA claims. *See generally* (ECF No. 50).

**A. Untimely Filing**

Defendant filed its Counterclaim on September 28, 2026. *See* (ECF No. 48). Plaintiff's responsive pleading was therefore due 21 days later, on October 19, 2026. Plaintiff filed its Motion to Dismiss the Counterclaim on October 20, 2026, one day past the filing deadline. Plaintiff did not seek an extension, nor did the Court grant one. In its Motion to Dismiss, Plaintiff states that the reason for the delay was a dental emergency. (ECF No. 49 at 1 n.1).

Under the Federal Rules of Civil Procedure, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, the Court accepts Plaintiff's representation of a dental emergency and concludes that the failure to respond was a result of "excusable neglect." *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 392 (1993) (holding that "excusable neglect" is an "elastic concept" and encompasses "inadvertent delays" and "omissions caused by circumstances beyond the control of the movant"). Furthermore, the United States Court of Appeals for the Fourth Circuit has established a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Thus, the Court will consider the untimely Motion to Dismiss.

**B. Count I States a Plausible Claim for Breach of Contract**

Under Maryland Law, "[t]o prevail on a claim for breach of contract, the plaintiff must show at a minimum that (1) the defendant owed a contractual obligation to the plaintiff, and (2)

the defendant breached that obligation." *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 432 (D. Md. 2024) (citing *RRC N.E. LLC v. BAA Md., Inc*., 413 Md. 638, 658 (2010)). Ultimately, "it is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove,* 166 Md. App. 286, 318–19 (2005). If the contract constitutes a restrictive covenant, such as a confidentiality agreement, "Maryland law imposes additional requirements.... To enforce a restrictive covenant, the employer must show—in addition to the two breach of contract elements above—that (1) the employer has a legally protected interest, (2) the covenant is no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant does not impose undue hardship on the employee, and (4) the covenant does not violate public policy." *Id.* (citing *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004)).

To survive a motion to dismiss a breach of contract claim, a complaint must "allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant." *Wolverine Const., Inc. v. Argonaut Ins. Co*., No. ELH-12-2803, 2013 WL 5727018, at *3 (D. Md. Oct. 18, 2013) (quoting *Robinson v. GEO Licensing Co., L.L.C.,* 173 F. Supp. 2d 419, 423 (D. Md. 2001)) (citations omitted).

The Court agrees that it is unclear whether Plaintiff seeks dismissal of Defendant's breach of contract claim. Nevertheless, the Complaint sufficiently alleges a contractual obligation. Defendant has produced a copy of the Employee Confidentiality and Invention Assignment Agreement. (ECF No. 48-1). Defendant also adequately alleges that the contract was breached by Plaintiff's retention of company information in the form of his company email inbox. (ECF No. 48 at 5). Defendant references the agreement which prohibited the removal and/or disclosure of SubCom's confidential information and/or trade secrets, without the prior written consent of the

company. (ECF No. 48-1 at ¶2). SubCom also required the return of any confidential information on or before the last day of employment. (*Id*. at ¶4); *see Day v. DB Capital Grp., LLC*, No. DKC-10-1658, 2011 WL 887554, at *15 (D. Md. Mar. 11, 2011) ("Here Plaintiff has pleaded the existence of a contract between himself and Russell Pettiford and that Mr. Pettiford breached the contract by failing to transfer back ownership of the D.C. property after one year.... These allegations are sufficient to maintain the breach of contract claim.").

In short, Defendant's allegations are more than sufficient to survive a motion to dismiss.

**C. Count II and III State a Plausible Claim for Trade Secret Misappropriation in Violation of the DTSA and MUTSA**

As to Count II and III, according to the DTSA, 18 U.S.C. § 1839(3), the term trade secret "means all forms of and types of financial, business, scientific, technical, economic, or engineering information ... if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" "The MUTSA has a functionally identical definition of the term." *ClearOne*, 710 F. Supp. at 435 (citing Md. Code Ann., Com. Law § 11-1201(e)); *see also Philips N. Am. LLC v. Hayes*, No. ELH-20-1409, 2020 WL 5407796, at *8 (D. Md. Sept. 9, 2020) (noting that "the DTSA and MUTSA define a trade secret in substantially the same manner") (quotation omitted).

Plaintiff relies upon *Peraton Inc.* and insists that Defendant does not identify any alleged trade secrets and/or confidential information with any specificity, instead relying on mere 'catchall' phrases. *Peraton Inc. v. Hussain,* No. DKC-25-2164, 2026 WL 1101964 (D. Md. Apr. 23, 2026). The Court disagrees and finds that Defendant alleges trade secrets and their independent economic value with adequate specificity. The Counterclaim identifies the content of the retained

126 GB of company data. Defendant asserts that Plaintiff's acquisition of 126 GB of company data included "proprietary calibration and operational procedures, detailed test data and results, drawings, system configuration data, proprietary cable diagrams and/or other technical drawings, shipboard master password lists, vendor and customer information, and shipboard email (.pst) files." (ECF No. 48 at 8); *see Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 402 (D. Md. 2015) (customer information qualified as a trade secret because the employer invested resources to develop the information and maintain its secrecy)*; see also Albert S. Smyth Co. v. Motes*, No. 17-cv-677-CCB, 2018 WL 3635024, at *4 (D. Md. July 31, 2018) ("In a competition for sales, information about potential customers and their buying habits, a competitor's pricing, business strategies, and vendors is a windfall, granting the recipient a key to undercut the competition's pricing, outbid their vendor contracts, and attract their customers.").

Also, Defendant alleges that it took reasonable measures to protect its confidential information. Its employees are bound by SubCom's "Employee Confidentiality and Invention Assignment Agreement," which prohibits employees from disclosing confidential information and requires them to return all company materials upon termination of employment. (ECF No. 48-1). Defendant also details that it uses personal user identifications and passwords for computer and/or network access and permits only certain personnel and/or employees to access the information maintained on its central server system. (ECF No. 48 at 10). Employees are further prohibited from transferring files or storage programs without express authorization, sending unprotected sensitive information, and forwarding SubCom emails to a personal non-SubCom email account. *Id*. at 11. Accordingly, Defendant took reasonable measures to keep its information secret. *See Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d. 115, 130 (D. Md. 2020) (determining that a confidentiality policy and restricted employee access are likely to succeed in establishing reasonable security

measures); *see also Albert S. Smyth Co., Inc.*, 2018 WL 3635024 at *3-4 (finding that a company took reasonable measures where employees were prohibited from disclosing company records, it stored business records on encrypted servers protected by firewalls, and violations of the company's confidentiality policies could lead to termination).

Lastly, "after demonstrating an item is a trade secret, a plaintiff must show that the defendant has misappropriated it." *Philips N. Am. LLC*, 2020 WL 5407796 at *10 (citation omitted). Misappropriation requires that a trade secret be acquired: "(1) by a person who knows that the trade secret was acquired by improper means, or (2) by a person who uses or discloses the trade secret after acquiring it through improper means." *Id.* (citing 18 U.S.C. § 1839(5)(A), (5)(B)(i)); *see also* Md. Code Ann., Com. Law § 11-1201(b). Per the DTSA, acquiring a trade secret by "improper means" "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A). The MUTSA's definition of misappropriation and "improper means" "mirrors the DTSA's definition." *Brightview Grp., LP*, 441 F. Supp. 3d at 132; *see also* Md. Code Ann., Com. Law § 11-1201(c). Misappropriation requires "demonstrating that the defendant acquired [the] trade secret by improper means, even if the plaintiff cannot show use of that trade secret." *Sys. 4, Inc. v. Landis & Dyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. 2001). It is well established that "*acquisition* alone is enough" to qualify as misappropriation. *Maryland Physician's Edge, LLC v. Behram*, No. DKC-17-2756, 2019 WL 4573417, at *5 (D. Md. Sept. 20, 2019) (emphasis in original).

Here, Defendant alleges that Plaintiff retained his entire email inbox/.pst following his resignation. *See* ECF No. 48 at 9, 11 ("Parandhamaia willfully and maliciously misappropriated SubCom's information by improper means by, among other things, acquiring, storing, and/or using

the information on external and/or unauthorized systems without authorization, and retaining the information post termination."). These allegations of Plaintiff's improper retention are readily sufficient to qualify as misappropriation under the DTSA and MUTSA. *See Bond v. PolyCycle,* 127 Md. App. 365, 379 (1999) ("Without authority from PolyCycle, appellant's taking of its computer files relating to the process constituted a theft, and therefore a misappropriation under CL § 11–1201."). Further, Plaintiff's argument that Defendant still has access to his emails bears no weight and is frankly irrelevant to SubCom's misappropriation claim under the DTSA and MUTSA. *See* (ECF No. 49-1 at 3, 4); *see also LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 314-15 (2004) (holding that transferring files to a personal computer is misappropriation).

**D. Immunity Provision**

Plaintiff's reliance upon the immunity provision of § 1833(b) is premature. Plaintiff is correct that he cannot be held liable for the disclosure of a trade secret that is made "in confidence … to an attorney; and solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint …." 18 U.S.C. § 1833(b)(1)(A)(i)-(ii). However, immunity is an affirmative defense. Courts "are reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." *Lockhart v. Holiday Inn Express Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013). "Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012) (citation omitted); *see also Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (explaining that affirmative defenses may only be decided at the motion to dismiss stage when "the predicate establishing the defense is apparent from the face of the complaint"); *see also Unum Grp. v. Loftus*, 220 F. Supp. 3d 143, 147 (D. Mass. 2016) ("While

Loftus contends that he is entitled to immunity under the DTSA because he handed Unum's documents over to his attorney to pursue legal action against Unum for alleged unlawful activities, the record lacks facts to support or reject his affirmative defense at this stage of litigation.").

Here, Plaintiff's immunity affirmative defense cannot be established from the face of the Counterclaim because, as in *Unum Grp.*, the Counterclaim does not establish that Plaintiff turned over all of SubCom's emails to his attorney, or whether they were being used soley to investigate a potential violation of law. *See Unum Grp.*, 220 F. Supp. 3d at 147 ("it is not ascertainable from the complaint whether [defendant] turned over *all* of [plaintiff's] documents to his attorney... or whether he used, is using, or plans to use, those documents for any purpose other than investigating a potential violation of law." (emphasis in original).

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Dismiss (ECF No. 49) is DENIED. Plaintiff shall file an answer within fourteen (14) days from the entry of this Memorandum Opinion and Order.

Date: November 19, 2026

/s/

J. Mark Coulson
United States Magistrate Judge